UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

XL SPECIALTY INSURANCE COMPANY,

                  Plaintiff,

        - against -

JOHN R. LAKIAN, DIANE W. LAMM, &
KOBRE & KIM LLP

                  Defendants.

------------------------------------------------------- x

Case No. 14-cv-5225-ANT

**XL SPECIALTY INSURANCE
COMPANY'S RESPONSE TO
MOTIONS TO INTERVENE BY
EISEMAN LEVINE, KNOX
CLAIMANTS, AND BRIEF
CARMEN**

## INTRODUCTION

      Interpleader Plaintiff XL Specialty Insurance Company ("XL Specialty") files this

response to the motions to intervene filed by proposed intervenors Eiseman Levine Lehrhaupt &

Kakoyiannis, P.C. ("Eiseman Levine") (Doc. 21); DJW Advisors, LLC, Knox, LLC d/b/a Knox,

LLC of New York (the "Knox Claimants") (Doc. 26); and Brief Carmen & Kleiman, LLP

("Brief Carmen") (Doc. 30).

      XL Specialty is a neutral stakeholder in this interpleader action because it deposited the

remaining insurance policy proceeds (the "Proceeds") into the registry of the Court (7/31/2014

docket notation) and does not claim any interest to the Proceeds.  Accordingly, pursuant to 28

U.S.C. §§ 1335 and 2361, XL Specialty will be requesting that the Court discharge it of liability

to all parties asserting an interest in the Proceeds.  Complementary to the discharge of XL

Specialty from liability to all interpleader defendants, XL Specialty will request that the Court

permanently enjoin all parties asserting a claim to the Proceeds from instituting any proceeding

against XL Specialty related to the Proceeds.  Therefore, XL Specialty's position is that all

parties asserting an interest in the Proceeds—whether their claim is valid or not—should be

entitled to intervene, so those parties are bound by the Court's discharge of XL Specialty and the Court's injunction.[1]

Although XL Specialty agrees that all proposed intervenors should be entitled to intervene so to be bound by the Court's discharge of XL Specialty, XL Specialty does not concede that all proposed intervenors have a *valid* claim to the Proceeds.  Specifically, the Knox Claimants do not have a valid right to the Proceeds as a judgment creditor of Capital L Group, LLC ("Capital L").  Because the Knox Claimants step into the shoes of Capital L and have no greater rights in the policy than Capital L, the Knox Claimants are subject to the same limitations on coverage for the default judgment against Capital L.  No coverage is available under the XL Specialty policy for the default judgment entered against Capital L because Capital L breached its obligations under the Policy to defend the claim by the Knox Claimants.  Thus, Capital L has no current, valid claim to the Proceeds, and the Knox Claimants, standing in the shoes of Capital L, should not be permitted to step in front of the parties who complied with the provisions of the policy.

## FACTUAL BACKGROUND

### The Policy

XL Specialty issued Financial Services Liability Policy Number ELU123603-11 (the "Policy") to Capital L for the **Policy Period** from November 1, 2011 to November 1, 2012. Hansen Affidavit ("Aff"), Ex. 1, Policy, Declarations, Items 1, 2, & 3.  The Policy has a $3

---

[1] On September 9, 2014, Merrill Communications, LLC ("Merrill") filed a letter seeking the Court's permission to intervene in the interpleader action to protect its purported claim to the Proceeds (Doc. 34), and the Court set a briefing schedule on Merrill's motion to intervene (Doc. 35).  Similar to the other proposed intervenors, XL Specialty agrees that Merrill's motion to intervene should be granted, so it will be bound by the Court's discharge of XL Specialty and the Court's injunction of proceedings against XL Specialty related to the Proceeds.

million Maximum Aggregate Limit of Liability, inclusive of **Defense Expenses**.[2] *Id.*,

Declarations, Item 3.

Subject to its complete terms and conditions, the Policy affords specified coverage to

**Insured Persons** for **Loss** (including **Defense Expenses**) resulting from **Claims** first made

during the **Policy Period** for **Wrongful Acts**. *Id.*, Investment Advisers Management Liability

Coverage Part, Section I(A).  The Policy defines **Defense Expenses**, in relevant part, as

"reasonable legal fees and expenses incurred in the defense of any **Claim** including the premium

for an appeal bond, attachment bond or similar bond but will not include applying for or

furnishing such bond." *Id.*, General Terms & Conditions ("GTC"), Section I(C).  The Policy

defines **Loss**, in relevant part, as "damages, judgments, settlements or other amounts (including

punitive or exemplary damages where insurable by law) in excess of the Retention that the

**Insured** is obligated to pay, and **Defense Expenses**, whether incurred by the Insurer or the

**Insured**, in excess of the Retention." *Id.*, GTC, Section I(G).

XL Specialty does not have a duty to defend **Insureds** against **Claims**.  Rather, the

Policy provides that "[i]t shall be the duty of the **Insureds** to defend any **Claim** under this

Policy." *Id.*, GTC, Section II(B)(1).  When defending a **Claim**, the Policy provides that "[n]o

**Insured** may . . . admit any liability for . . . any **Claim** without the Insurer's consent, such

consent not to be unreasonably withheld," *id.*, Section II(B)(2), and that "[t]he **Insured** . . .

agrees that it will do nothing which in any way increases the Insurer's exposure under this

Policy," *id.*, Section II(I)(l).

The $3 million Limit of Liability may be exhausted by **Defense Expenses**.  *Id.*, GTC,

Section II(A)(2) ("**Defense Expenses** incurred by the Insurer or the **Insured** in defense of a

---

[2] Terms in bold are defined in the Policy.

-3-

**Claim** will be part of and not in addition to the Insurer's Limits of Liability, and payment of **Defense Expenses** by the Insurer will reduce and may exhaust the Limits of Liability.").

The Policy provides that "[i]f the Insurer's Limit of Liability for the Policy, as set forth in Item 3(g) of the Declarations [$3 million] is exhausted by the payment of **Loss**, the premium as set forth in Item 8 of the Declarations will be fully earned, all obligations of the Insurer under this Policy will be completely fulfilled and exhausted, and the Insurer will have no further obligation of any kind whatsoever under this Policy." Policy, GTC, Section II(J). Therefore, when XL Specialty has paid $3 million in **Loss**, including **Defense Expenses**, it has no further obligation under the Policy to pay **Defense Expenses** or indemnify any **Insured** for any judgment or settlement. XL Specialty paid the remaining Policy limit into the registry of this Court after the filing of this interpleader action.

**Lakian's and Lamm's Requests for Coverage**

Interpleader Defendants John R. Lakian ("Lakian") and Diane W. Lamm ("Lamm") are **Insureds** under the Policy. Doc. No. 1, ¶ 23. They sought coverage for **Defense Expenses** under the Policy for two proceedings: (1) *Branigan, et al. v. Lakian, et al.*, No. 651975/2012 (N.Y. Sup. Ct., N.Y. Cnty.) (the "Branigan Action") and (2) *Knox, LLC, et al. v. Capital L Group, LLC, et al.*, No. 651880/2012 (N.Y. Sup. Ct., N.Y. Cnty.) (the "Knox Action"). *Id.*, ¶ 2.

**The Branigan Action**

On June 6, 2012, Mark Branigan and Pangea Capital Management, LLC filed the Branigan Action in New York state court against Lakian and Lamm, among others, and sought damages in excess of $10 million. *Id.*, ¶ 26.

By letter dated October 16, 2012, subject to a reservation of rights, XL Specialty acknowledged coverage under the Policy for Lamm for the Branigan Action and agreed to

advance **Defense Expenses** incurred by Lamm in defense of the Branigan Action. *Id.*, ¶ 28. Lamm retained the law firm Kobre & Kim ("K&K") to defend her in the Branigan Action. *Id.*, ¶ 29. XL Specialty did not retain K&K, and it did not enter into an agreement with K&K to pay fees and costs incurred by K&K in the Branigan Action. *Id.*, ¶ 30. Instead, XL Specialty consented to Lamm's retention of K&K and agreed to advance on her behalf amounts she believed were owed to K&K. *Id.*, ¶ 31. XL Specialty denied coverage under the Policy for Lakian for the Branigan Action.

In or around late May or early June 2013, K&K withdrew from the representation of Lamm in the Branigan Action. *Id.*, ¶ 33. During the time that K&K represented Lamm for the Branigan Action, K&K billed Lamm for approximately $1,314,780.19 in fees and costs. *Id.*, ¶ 45. Lamm directed XL Specialty not to pay the full amount of K&K's invoices. *Id.*, ¶ 47. Lamm disputed the K&K invoices on the grounds that the invoices did not represent work that was performed on her behalf and that the amount of the invoices was unreasonable for the work performed. *Id.*, ¶ 46. To date, over $1 million of K&K's invoices remain outstanding. *Id.*, ¶ 45. Although K&K is not an **Insured** under the Policy and although XL Specialty's obligations run to its **Insured** Lamm, K&K has demanded that XL Specialty pay the full outstanding amount of its invoices, asserting contractual or quasi-contractual rights to the Policy limit. *Id.*, ¶ 48.

After K&K's withdrawal as her counsel, Lamm retained Eiseman Levine to represent her in the Branigan Action, and XL Specialty consented to the retention of Eiseman Levine to represent Lamm but did not enter into an agreement with Eiseman Levine to pay its fees and costs incurred in the Branigan Action. *Id.*, ¶ 34. Instead, XL Specialty consented to Lamm's retention of Eiseman Levine and agreed to advance on her behalf amounts she believed were owed to Eiseman Levine. *Id.* Eiseman Levine filed a motion to intervene in this action to

recover the amount of fees and costs incurred by it to represent Lamm in the Branigan Action that remained unpaid when XL Specialty filed this interpleader action.  *See* Doc. 21.

**The Knox Action**

On May 5, 2012, the Knox Claimants filed the Knox Action in New York state court against Lakian, Lamm, and Capital L and sought damages in excess of $2 million.  *Id.*, ¶ 37.

By letter dated June 20, 2012, subject to a reservation of rights, XL Specialty acknowledged coverage under the Policy for Lakian and Lamm for the Knox Action and agreed to advance **Defense Expenses** incurred by Lakian and Lamm in defense of the Knox Action.  *Id.*, ¶ 38.  Lakian and Lamm both initially retained K&K to defend them in the Knox Action.  *Id.*, ¶ 39.  In late May or early June 2013, K&K withdrew from the representation of Lakian and Lamm in the Knox Action.  *Id.*, ¶ 40.  After K&K's withdrawal, Lakian and Lamm each retained separate firms to defend them in the Knox Action.  *Id.*, ¶ 41.  Those firms, Eiseman Levine and Brief Carmen, filed motions to intervene in this action to recover the amount of fees and costs incurred by them to represent Lamm and Lakian, respectively, in the Knox Action that remained unpaid when XL Specialty filed the interpleader action.  *See* Docs. 21, 30.

When XL Specialty learned that the Knox Claimants filed a motion for default judgment against Capital L in the Knox Action, counsel for XL Specialty sent a letter to Capital L's insurance broker asking whom XL Specialty should contact "concerning [Capital L's] obligation to defend this case."  Hansen Affidavit, ¶ 4, Ex. 2.  XL Specialty never received a response.  *Id.*, ¶ 5.

The Knox Claimants filed a motion to intervene in this action to claim an interest in the Proceeds to collect on a multi-million dollar default judgment entered against Capital L in the Knox Action.  Doc. 26.

**XL Specialty's Payment of Defense Expenses**

As of the filing of this interpleader action, XL Specialty had advanced $1,627,403.90 in **Defense Expenses**, including **Defense Expenses**, incurred by Lakian and Lamm in the Knox Action. Doc. 1, ¶ 3. Therefore, only $1,372,596.10 remains on the Policy's limit of liability. *Id.*, ¶ 4.

In addition to interpleader defendants Lamm, Lakian, and K&K, firms retained by Lakian and Lamm—Eiseman Levine and Brief Carmen—and the Knox Claimants now also assert their respect rights to the Proceeds and seek to intervene in this interpleader action.

**The Interpleader Action**

On July 14, 2014, XL Specialty filed this interpleader action and named as defendants Lakian, Lamm, and K&K. Doc. 1. Because it was faced with conflicting and competing demands to the Proceeds (*i.e.*, the remaining $1,372,596.10 of the Policy's limit), XL Specialty filed this interpleader action to allow all interested parties to present their claims to the Court in an orderly manner. Doc 1, ¶¶ 1, 7.

## I.   THE MOTIONS TO INTERVENE SHOULD BE GRANTED SO THAT ALL PARTIES CLAIMING AN INTEREST IN THE POLICY ARE BOUND BY THE COURT'S DISCHARGE OF XL SPECIALTY AS A NEUTRAL STAKEHOLDER

XL Specialty is a neutral stakeholder with respect to the Proceeds, and it seeks relief from the Court to discharge it from all liability related to the Proceeds and to enjoin all claimants with a purported interest in the Proceeds from filing future proceedings against XL Specialty related to the Proceeds. Consequently, all parties claiming an interest in the Proceeds—whether ultimately found to be valid or not—should be allowed to intervene and be bound by the discharge of XL Specialty. Allowing all claimants asserting a right to the Proceeds to intervene

is consistent with New York law commending insurers for filing interpleader actions because interpleader allows all claimants to policy proceeds to be treated fairly.

New York law gives insurers broad discretion to pay insurance policy proceeds as demands are made for those proceeds.[3] *See In re September 11 Litigation,* 723 F. Supp. 2d 534, 542 (S.D.N.Y. 2010) (holding that New York law allows insurers to make payments based on a "first-come first-served basis"); *STV Group, Inc. v. Am. Cont'l Props., Inc.*, 234 A.D.2d 50, 50 (N.Y. App. Div. 1996) ("An insurer may settle with less than all of the claimants under a particular policy even if such settlement exhausts the policy proceeds."). But New York courts also commend efforts by insurers to distribute insurance funds in a "more equitable" manner by filing an interpleader action and allowing claimants to lay claim to policy proceeds. *See In Re Axis Reinsurance Co. REFCO Related Insurance Litigation*, No. 07–CV–07924, 2010 WL 1375712 (S.D.N.Y. Mar. 7, 2010) (quoting *Boris v. Flaherty*, 242 A.D.2d 9, 14 (NY. App. Div. 1998) ("We commend New York Central for its effort to distribute its insurance coverage in an equitable manner, rather than simply paying judgment creditors in the order that the judgments are entered until coverage is exhausted. All claimants are treated fairly in the interpleader action and the rights of the insured are fully protected."). "Interpleader actions, while not required in situations such as this [where there are multiple, competing claims to limited policy proceeds], are to be encouraged as part of the duty of good faith of an insurer     . . . ." *Boris*, 242 A.A.2d. at 14.

---

[3] Because the Policy was issued to Capital L at a North Carolina address, a party may argue that North Carolina law applies to determine XL Specialty's discretion to pay policy limits. Choice of law does not matter here because North Carolina law is consistent with New York law on the issues addressed in this brief. Among other things, North Carolina law gives broad discretion to an insurer to settle one claim against the insured even though the settlement will erode or exhaust the limit of liability to other claims. *See Alford v. Textile Ins. Co.*, 248 N.C. 224, 230 (1958) ("The courts which have been called upon to consider the question are in agreement that an insurer may settle part of multiple claims arising from the negligence of its insured, even though such settlements result in preference by exhausting the fund to which the injured party whose claim has not been settled might otherwise look for payment.").

Following the guidance of New York courts, XL Specialty filed this interpleader action to allow all claimants, including **Insured Persons** Lakian and Lamm, to present their claims to the Proceeds for adjudication by the Court.  Consequently, all parties asserting an interest in the Proceeds should be allowed to intervene and seek a determination of the validity and extent of their interest in the Proceeds.

II.   **ALTHOUGH THEY SHOULD BE ALLOWED TO INTERVENE, THE KNOX PLAINTIFFS HAVE NO CURRENT, VALID RIGHT TO THE PROCEEDS AS A JUDGMENT CREDITOR OF CAPITAL L.**

The Knox Claimants allege that they have a current, valid right to the Proceeds as a judgment creditor of Capital L in the Knox Action.  *See* Doc. 28 at 12-13.  They do not.

As an initial matter, the Knox Claimants, as judgment creditors, stand in the shoes of Capital L, and any coverage defenses that would apply to Capital L apply equally to the Knox Claimants.  *See Cont'l Cas. Co. v. Employers Ins. Co. of Wausau*, 871 N.Y.S.2d 48, 54 (N.Y. App. Div. 2008) ("[A]ll the defenses available to an insurer against an insured are available also against injured claimants.").  Thus, if Capital L is not entitled to coverage under the Policy for the default judgment in the Knox Action, the Knox Claimants cannot recover under the Policy for the default judgment.

Capital L is not, in fact, entitled to coverage under the Policy for the default judgment entered against it in the Knox Action because Capital L breached its obligations under the Policy to defend the Knox Action.  The Policy provides that "[i]t shall be the duty of the **Insureds** to defend any **Claim** under this Policy."  Hansen Affidavit, Exhibit 1, Policy, GTC, Section II(B)(1).  When defending a **Claim**, the Policy provides that "[n]o **Insured** may . . . admit any liability for . . . any **Claim** without the Insurer's consent, such consent not to be unreasonably withheld," *id.*, Section II(B)(2), and that "[t]he **Insured** . . . agrees that it will do nothing which

in any way increases the Insurer's exposure under this Policy," *id.*, Section II(I)(l).  When XL Specialty learned that the Knox Claimants filed a motion for default judgment against Capital L, it sought information from Capital L's agent, its insurance broker, on whom to contact at Capital L concerning its defense obligations and never received a response.[4]  Hansen Affidavit, ¶ 5. Because Capital L allowed a default judgment to be entered against it, it failed to fulfill its duty to defend the Knox Action and increased XL Specialty's potential exposure under the Policy for the Knox Action.  Capital L's inaction in face of this legal proceeding vitiates coverage for Capital L under the Policy.

There is a compelling rationale for application of these requirements here.  Lakian and Lamm have complied with the requirements of the Policy by seeking consent to the retention of defense counsel and defending themselves in those actions.  On the other hand, Capital L did neither.  Now, the Knox Claimants, standing in the shoes of Capital L, would like to step in front of the parties who complied with the Policy.  That is not appropriate and is precluded as a matter of law.

## CONCLUSION

Because XL Specialty is entitled to a discharge of liability from all parties claiming an interest in the Proceeds, the proposed intervenors should be allowed to intervene in the interpleader action and be bound by the Court's discharge of XL Specialty.  However, XL Specialty notes that, although the Knox Claimants assert a right to the Proceeds as a judgment creditor of Capital L, no coverage is available under the Policy for the default judgment entered against Capital L in the Knox Action.

---

[4] Under New York law, a broker is the agent of the insured. *See Crimi v. Nat'l Life Ins. Co.*, 1 A.D.3d 309, 310 (N.Y. Ct. App. 2003).

Respectfully Submitted,

September 22, 2014

By:   /s/ Jonathan Wexler
            John H. Eickemeyer, Esq. (JE8302)
            jeickemeyer@vedderprice.com
            Jonathan Wexler, Esq. (JW5587)
            jwexler@vedderprice.com
            Vedder Price
            1633 Broadway, 47th Floor
            New York, New York  10019
            T: (212) 407 7760
            F: (212) 407 7799

Of counsel:
David H. Topol
Leland H. Jones IV
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
202.719.7000