UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>- vs -<br><br>JOHN R. LAKIAN, DIANE W. LAMM & KOBRE & KIM, LLP,<br><br>                    Defendants. | **ECF Case**<br>14 Civ. 5225 (ANT) |

## MEMORANDUM OF LAW IN OPPOSITION TO KNOX, LLC D/B/A KNOX, LLC OF NEW YORK'S AND DJW ADVISORS, LLC'S MOTION TO INTERVENE

MCCARTER & ENGLISH, LLP
Brian J. Osias
Four Gateway Center
100 Mulberry Street
Newark, NJ  07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
*Attorneys for Defendants John Lakian and Diane Lamm*

ME1 18933560v.2

## **TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.......................................................3

      A.      The Policy .........................................................................................................3

      B.      The Underlying Actions.....................................................................................4

      C.      Lakian's and Lamm's Defense Expenses in the Underlying Actions...........5

      D.      The Present Interpleader Action ..................................................................6

ARGUMENT...................................................................................................................................7

    POINT I      THIS COURT SHOULD DENY KNOX/DJW'S MOTION AS THEIR INTERVENTION IS FUTILE AND FRIVOLOUS........................7

      A.      Knox/DJW "Stand in the Shoes" of Capital L and Capital L is not Entitled to Coverage. ........................................................................................7

      B.      Capital L Breached the Policy and is not Entitled to the Policy Limits. ..............................................................................................................8

      C.      Knox/DJW Do Not Have a Direct Right Against XL................................9

            1.      Section 3420 Does not Apply to the Policy. ....................................9

      D.      Even if Capital L Could Assert an Action and was Entitled to Coverage, Knox/DJW Do Not Trump Lakian's and Lamm's Rights as Insureds with Earlier Claims. ...............................................................11

    POINT II     KNOX/DJW ARE NOT ENTITLED TO INTERVENTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 24........................12

      A.      Knox/DJW Do Not Meet the Factors for Intervention as of Right Under Federal Rule of Civil Procedure 24(a). ..........................................12

      B.      Knox/DJW Do Not Meet the Factors for Permissive Intervention Under Federal Rule of Civil Procedure 24(b)............................................14

            1.      Permitting Intervention Would Cause Prejudice and Delay by Altering the Scope of the Present Action..................................14

      C.      Permitting Intervention Will Prejudice the Existing Parties by Destroying Their Expectations. .................................................................15

CONCLUSION..............................................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Brennan v. N.Y.C. Bd. of Educ.*,
    260 F.3d 123 (2d Cir. 2001)..................................................................................12

*Commercial Union Ins. Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*,
    31 B.R. 965 (S.D.N.Y. 1983)..................................................................................11

*Commonwealth Land Title Ins. Co. v. Am. Signature Servs., Inc.*,
    No. 13-cv-3266, 2014 WL 672926 (E.D.N.Y. Feb. 20, 2014) ..........................14, 15

*Cont'l Ins. Co. v. Atlantic Cas. Ins. Co.*,
    603 F.3d 169 (2d Cir. 2010)...............................................................................14, 15

*Donaldson v. United States*,
    400 U.S. 517 (1971)..................................................................................................18

*Floyd v. City of New York*,
    08 CIV. 1034 AT, 2014 WL 3765729 (S.D.N.Y. July 30, 2014) .......................8, 12

*Holland AM. Ins. Co. v. Succession of Shepherd J. Roy*,
    777 F.2d 992 (5th Cir. 1985) ..................................................................................11

*In re Holocaust Victim Assets Litig.*,
    225 F.3d 191 (2d Cir. 2000)....................................................................................20

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................12

*Padro v. Astrue*,
    11-CV-1788 CBA, 2013 WL 1192824 (E.D.N.Y. 2013) ......................................20

*In re Platinum & Palladium Commodities, Litig.*,
    No. 10-CV-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ...........................18

*Price & Pierce Int'l Inc. v. Spicers Int'l Paper Sales Inc.*,
    50 B.R. 25 (S.D.N.Y. 1985).....................................................................................11

*Restor–A–Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*,
    725 F.2d 871 (2d Cir. 1984)....................................................................................18

*In re September 11 Prop. Damage Litig.*,
    650 F.3d 145 (2d Cir. 2011)....................................................................................16

*U.S. Postal Serv. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978) ......................................................................................... 19

*United States v. Pitney Bowes,*
    25 F.3d 66 (2d Cir. 1994) ................................................................................... 12, 19, 20

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.,*
    922 F.2d 92 (2d Cir. 1990) ...................................................................................... 18, 19

**STATE CASES**

*Argo Corp. v. Greater N.Y. Mut. Ins. Co.*,
    4 N.Y.3d 332 (N.Y. 2005) ............................................................................................ 13

*Boris v. Flaherty*,
    242 A.D.2d 9, 1998 N.Y. Slip Op. 04161 (N.Y. App. Div. 1998) .............................. 16

*D'Arata v. New York Cent. Mut. Fire Ins. Co.*,
    76 N.Y.2d 659 (N.Y. 1990) ......................................................................................... 12

*Fisher v. Hanover Ins. Co.*,
    288 A.D.2d 806 (N.Y. App. Div. 2001) ...................................................................... 13

*Lang v. Hanover Ins. Co.*,
    3 N.Y.3d 350 (N.Y. App. Div. 2004) .......................................................................... 14

*Preserver Ins. Co. v. Ryba*,
    893 N.E.2d 97 (N.Y. 2008) .......................................................................................... 15

*Rocco v. Cont'l Ins. Co.,*
    No. CV990171669SX05, 2003 WL 21235478 (Conn. Super. Ct. May 13, 2003) ...... 13

*Spadaro v. Newark Ins. Co.*,
    21 A.D.2d 226 (N.Y. App. Div. 1964) ........................................................................ 13

*Sperling v. Great Amer. Ind. Co.*,
    166 N.E.2d 482 (N.Y. 1960) ........................................................................................ 13

*Matter of State Farm Indem. Co. v. Moore*,
    58 A.D.3d 429 (N.Y. App. Div. 2009) ........................................................................ 13

*STV Group v. Am. Cont'l Props.*,
    234 A.D.2d 50 (N.Y. App. Div. 1996) .................................................................. 16, 17

*Wening v. Glens Falls Ind. Co.*,
    61 N.E.2d 442 (NY 1945) ...................................................................................... 12, 13

ME1 18933560v.2

**STATE STATUTES**

N.Y. INS. LAW § 3420(a) .................................................................................................14, 15

N.Y. INS. LAW § 3420(c)(2)(B) ........................................................................................13, 14

**RULES**

Federal Rule of Civil Procedure 24(a) ...................................................................6, 17, 18, 20

Federal Rule of Civil Procedure 24(b) ...................................................................6, 17, 19, 20

**OTHER AUTHORITIES**

70A N.Y. JUR. INSURANCE § 2216 .............................................................................................16

**PRELIMINARY STATEMENT**

Defendants John R. Lakian and Diane W. Lamm respectfully submit this memorandum of law in opposition to the motions of Proposed Intervenors Knox, LLC d/b/a Knox, LLC of New York ("Knox") and DJW Advisors, LLC ("DJW") (collectively "Knox/DJW") to intervene as of right or permissively in this interpleader action.  Lakian and Lamm do not oppose the applications of proposed intervenors Brief, Carmen & Kleiman, LLP ("BCK"); Eiseman, Levine, Lehrhaupt & Kakoyiannis ("ELLK")  and Merrill Communications, LLC ("Merrill").

Knox/DJW should not be permitted to intervene in this action, primarily because the relief they seek is frivolous and any such intervention would be futile.  Knox/DJW similarly do not meet the factors for intervention as of right under Federal Rule of Civil Procedure 24(a), nor do they meet the requirements for permissive intervention under Federal Rule of Civil Procedure 24(b).  Lakian, Lamm and all parties and proposed intervenors, other than Knox/DJW, have been cooperating to reach a settlement in this action.  If this Court rejects Knox/DJW's motion to intervene -- as it should -- Lakian and Lamm anticipate coming to an agreement with the other parties and intervenors regarding allocation of the interpleaded funds, likely concluding this action in its entirety.

Knox/DJW principally assert a right of intervention because they obtained a default judgment against Capital L Group, LLC ("Capital L"), an insured under the same insurance policy covering Lakian and Lamm. ("Policy").  As judgment creditors, however, Knox/DJW "step into the shoes" of, and can have no greater rights than, Capital L.  They are subject to any coverage defenses XL has against Capital L.  Simply put, Capital L is not entitled to any Policy proceeds by virtue of its multiple and material breaches of the Policy.  After Knox/DJW sued, Capital L did not defend itself and defaulted, thus forfeiting any rights under the Policy.  In any event, Knox/DJW have no right to pursue a direct action against Lakian and Lamm as a matter of

1

New York law, and even if they did --which they do not-- their claim is too late, and they should not be permitted to jump to the head of the line in light of Lakian and Lamm's established and mature claims.

Knox/DJW cannot meet the requirements for intervention as of right. Instead of a direct and protectable interest in this action, their interests are contingent and speculative. Their claimed interests are based on their status as Capital L's judgment creditors, which have no merit for the reasons just mentioned, and the possibility that they may someday obtain a judgment against Lakian and/or Lamm. Courts in this district have held that those types of interests are too contingent and speculative to serve as the basis for intervention as a matter of right.

Finally, permissive intervention is inappropriate because it would cause the existing parties appreciable prejudice and delay. Knox/DJW have coverage issues not shared with any other party or proposed intervenor. Adding them to the case brings a host of complicated collateral issues that must be resolved before the interpleader can proceed. Those issues would radically alter the scope and nature of the present action in a way not intended by the permissive intervention rule. Further, they would also preclude the expeditious resolution of this entire matter, which the parties and proposed intervenors (other than Knox/DJW) have been working together to reach.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

This interpleader action stems from competing demands for remainder of the Policy's $3 million limits.  To date, the insurer, XL Specialty Insurance Company ("XL"), has advanced more than half the Policy limits to defend Lakian and Lamm in two actions.  XL alleges that less than half of the Policy limits remain.  To resolve the interests, XL filed this interpleader action against Lakian, Lamm and their former counsel, Kobre & Kim, LLP ("K&K").  Now Lakian's counsel, BCK, and Lamm's former counsel, ELLK, seek to intervene in this action to claim a portion of the Policy limits to pay their legal fees.  Relatedly, Merrill claims it is owed outstanding fees for e-discovery services it allegedly provided to K&K and then to ELLK in connection with Lamm's defense.  In addition, Knox/DJW, who obtained a default judgment against Capital L, and are actively litigating against Lakian and Lamm in that same action, seek to claim the remaining Policy limits or a substantial portion thereof for themselves.

### A.   The Policy

XL issued the Policy, Financial Services Liability Policy Number ELU123603-11, which names Capital L as an insured and Lakian and Lamm as additional insureds. (Pl.'s Compl. for Statutory Interpleader, dated July 14, 2014 (Dkt. 2-1) Exhibit 1.) ("Complaint")  The Policy has a $3 million Maximum Aggregate Limit of Liability, which includes Defense Expenses.  (*Id*. pg

---

[1] These facts are drawn from the Complaint and from Knox/DJW's, ELLK's and BCK's motions to intervene.  For the purposes of this motion only, Lakian and Lamm accept all non-conclusory and non-frivolous allegations in those motions as true.  *See Floyd v. City of New York*, 08 CIV. 1034 AT, 2014 WL 3765729 (S.D.N.Y. July 30, 2014) (Torres, J.) (quoting *Bay Casino, LLC v. M/V Royal Empress*, 199 F.R.D. 464, 466 (E.D.N.Y. 1999) (in a motion to intervene, court must accept as true all well-pled non-conclusory allegations). For the Court's convenience, Lakian and Lamm will refer to those exhibits already submitted and will not submit duplicative exhibits.

1 ¶ 3, pg 33 ¶ 1, II(A)(2).)[2]  Once the limit is eroded, the Policy is exhausted and XL has no further obligations. (*Id*. ¶ II( J).)

The Policy requires the insured to "defend any Claim under this Policy."  (*Id*. ¶ II.(B)(1).) The Policy also states:

> [n]o Insured may incur any Defense Expense or admit any liability for . . . any Claim without the Insurer's consent . . . . The Insurer will have the right to make investigations and conduct negotiations and, with the consent of the Insured, enter into such settlement of any Claim as the Insurer deems appropriate.

(*Id.* ¶ II(B)(2).)  Each insured "agrees to provide the Insurer with all information, assistance and cooperation that the Insurer may reasonably request, and further agrees that it will do nothing which in any way increases the Insurer's exposure under this Policy or in any way prejudices the Insurer's potential or actual rights of recovery." (*Id*. § II(I)(1).)  Above all, the insured must "do nothing which in any way increases the Insurer's exposure under this Policy." (*Id*. ¶ II (I)(1).) The Policy's terms, conditions and limitations, including those referenced above, "may only be waived or changed by written endorsement signed by the Insurer." (*Id*. § II(L)(4).)

### B.  The Underlying Actions

On May 5, 2012, Knox/DJW filed an action in New York Supreme Court against Lakian, Lamm and Capital L, captioned *Knox, LLC, et al. v. Capital L Group, LLC, et al.*, No. 651880/2012 (N.Y. Sup. Ct., N.Y. Cnty.) ("Knox Action").  On June 20, 2012, XL, subject to a reservation of rights, acknowledged coverage under the Policy for Lakian and Lamm and agreed to advance Defense Expenses for Lakian and Lamm.  Lakian and Lamm actively litigated the Knox Action and incurred Defense Expenses.  Capital L did not answer, appear or otherwise defend itself.  (Aff. of Philip Halpern, dated September 8, 2014 (Dkt. 27) ¶¶ 8-12.) ("Halpern

---

[2]The Policy defines Defense Expenses as "reasonable legal fees and expenses incurred in the defense of any Claim…"  (*Id*. page 35 ¶ I(C).)  All capitalized terms not defined in this memorandum incorporate the definitions from the Policy.

4

Aff.") On July 22, 2013, a default judgment was entered against Capital L in the Knox Action. (*Id.*) On March 27, 2014, an order was entered setting the amount of the judgment. (*Id.*)

On June 6, 2012, Mark Branigan and Pangea Capital Management, LLC filed an action against Lakian and Lamm in New York Supreme Court captioned *Branigan, et al. v. Lakian*, *et al.*, No. 651957/2012 (N.Y. Sup. Ct., N.Y. Cnty.) (the "Branigan Action") (collectively with the Knox Action the "Underlying Actions") (Decl. of Richard E. Carmen, dated September 8, 2014 (Dkt. 33) ¶8).) ("Carmen Decl."). Lakian and Lamm notified XL of the Branigan Action. On October 16, 2012, subject to a reservation of rights, XL acknowledged coverage under the Policy for Lamm and agreed to advance Lamm's Defense Expenses. (Complaint ¶ 28.) XL denied coverage for Lakian in the Branigan Action. (*Id.* ¶ 32.) The parties subsequently agreed to resolve the Branigan Action through a JAMS arbitration. (Carmen Decl. ¶ 9.)

### C.  Lakian's and Lamm's Defense Expenses in the Underlying Actions

Initially, Lakian and Lamm retained K&K to defend them both in the Underlying Actions. (Carmen Decl. ¶ 11.) XL advanced Defense Expenses. In the spring of 2013, K&K withdrew as Lakian and Lamm's counsel. (Carmen Decl. ¶ 13; Compl. ¶ 33.) After K&K withdrew, Lamm retained ELLK as her new counsel in both Underlying Actions. (Decl. of Eric Levine, dated Sept. 8, 2014 (Dkt. 23) Ex. 1.) ("Levine Decl.")  She notified XL, and XL consented and agreed to advance the Defense Expenses. (*Id.* Ex. 3-6.) Lakian retained BCK as his new counsel in the Underlying Actions. (Carmen Decl. ¶ 14.) He informed XL, and XL consented and agreed to advance 75% of the Defense Expenses for the Knox Action. (*Id.* ¶ 15.) In August 2014, McCarter & English ("M&E") replaced ELLK as counsel for Lamm in the Branigan Action. BCK still represents Lakian in the Underlying Actions.

XL alleges it has advanced a total of $1,627,403.90 in Defense Expenses for Lakian and Lamm in the Underlying Actions. (Complaint ¶ 3.) K&K alleges that it is owed over a million

5

dollars in outstanding fees and costs. (*Id.* ¶ 45.) BCK alleges that it is owed $53,930.06 in fees and costs. (Carmen Decl. ¶ 17.) ELLK alleges that it is owed a total of $210,000 fees and costs, inclusive of Merrill's costs. (Levine Decl. ¶ 33.) Merrill alleges it is owed approximately $70,000 in fees. (Letter addressed to Judge Analisa Torres from Marc D. Youngelson, dated Sept. 9, 2009 (Dkt. 34).)

### D.     The Present Interpleader Action

On July 14, 2014, XL instituted the present interpleader action. (Complaint). Since then XL, Lakian, Lamm, ELLK and K&K have been negotiating and anticipate, absent intervention by Knox/DJW, that they will be able to resolve the present interpleader. Knox/DJW has sought leave from the Court to file a motion to intervene. (Halpern Aff. Ex. J.) Lakian, Lamm and K&K opposed that request. (*Id*. Exs. K & L.) This Court subsequently granted leave to file and set a briefing schedule. Thereafter, ELLK and BCK also sought leave to file motions to intervene (Levine Decl. ¶ 44; Carmen Decl. ¶ 35.), and were granted leave to file, subject to the briefing schedule in place. (Levine Decl. ¶ 45, Ex. E.) On September 8, 2014, ELLK, BCK and Knox/DJW filed their respective motions to intervene. On September 9, 2014, Merrill sought leave to file a motion to intervene to assert its claimed rights to reimbursement from the Policy proceeds. (Youngelson Letter, Dkt. 34.)[3] On September 10, 2014, this Court granted Merrill leave to file a motion to intervene and set a briefing schedule with an October 31, 2014 return date. (Memo Endorsement on Letter filed by Marc D Youngelson, dated Sept. 10, 2014 (Dkt.

---

[3] On September 12, 2014, Lamm filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of North Carolina (Asheville Division). Lamm's petition should not affect this action as interpleader actions are traditionally not subject to the automatic bankruptcy stay. *See*, *e.g.*, *Holland AM. Ins. Co. v. Succession of Shepherd J. Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (automatic stay does not apply to interpleader); *Price & Pierce Int'l Inc. v. Spicers Int'l Paper Sales Inc.,* 50 B.R. 25, 26 (S.D.N.Y. 1985) (naming a debtor as a defendant to an interpleader action does not violate the automatic stay); *Commercial Union Ins. Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.),* 31 B.R. 965, 970 (S.D.N.Y. 1983).

6

35).)  Lakian and Lamm oppose Knox/DJW's motion, but do not oppose ELLK's, BCK's or Merrill's motions.

# ARGUMENT

## POINT I

### THIS COURT SHOULD DENY KNOX/DJW'S MOTION AS THEIR INTERVENTION IS FUTILE AND FRIVOLOUS.

Knox/DJW's intervention in this action should be denied because their intervention would be futile and their claimed interests are frivolous.  Parties should not be permitted to intervene to assert claims that are frivolous or futile.  *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 490 (S.D.N.Y. 1998); *United States v. Pitney Bowes,* 25 F.3d 66, 69 (2d Cir. 1994); *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (internal quotation marks and citation omitted); *see also, e.g.*, *Floyd*, 2014 WL 3765729, at *48 n.25 (noting that futility is a proper basis for denying a motion to intervene).  In considering Federal Rule of Civil Procedure 24, which governs motions to intervene, courts should be cognizant that its "various components ... are not bright lines, but ranges—not all 'interests' are of equal rank, not all impairments are of the same degree, " *Floyd*, 2014 WL 3765729, at *10.

    **A.**    **Knox/DJW "Stand in the Shoes" of Capital L and Capital L is not Entitled to Coverage.**

As Capital L's judgment creditors, Knox/DJW have no greater rights to the Policy than Capital L.  As the New York Court of Appeals stated:

> The rule is well-settled that a judgment creditor, seeking to enforce a policy insuring the judgment debtor against liability, stands in the shoes of the assured and can recover against the insurer only if the assured could recover under the terms of the policy.

*Wening v. Glens Falls Ind. Co.*, 61 N.E.2d 442, 443 (NY 1945); *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 665 (N.Y. 1990) (judgment creditor "'stands in the shoes' of the

insured and can have no greater rights than the insured."); *Spadaro v. Newark Ins. Co.*, 21 A.D.2d 226, 230 (N.Y. App. Div. 1964), *affd* 15 N.Y.2d 1000 (creditor of insured must stand in the same position as insured); *Sperling v. Great Amer. Ind. Co.*, 166 N.E.2d 482 (N.Y. 1960). Stated differently, a judgment creditor's rights against the insurer are no greater than the insured's rights. Like the insured, the judgment creditor is subject to all the coverage defenses that would have applied to the insured and cannot recover unless the insured could have recovered. *See Wening*, 61 N.E.2d at 443. As judgment creditors, Knox/DJW are subject to the same defenses and objections that Capital L would face if Capital L were seeking to intervene in this action.[4]

### B. Capital L Breached the Policy and is not Entitled to the Policy Limits.

Knox/DJW's intervention is futile and frivolous because, like Capital L, they are not entitled to coverage under the Policy. Where an insured permits a default to enter, the insurer is not liable for the default judgment. *See Fisher v. Hanover Ins. Co.*, 288 A.D.2d 806 (N.Y. App. Div. 2001); *Argo Corp. v. Greater N.Y. Mut. Ins. Co.*, 4 N.Y.3d 332 (N.Y. 2005) (insurer may disclaim coverage where its insured allowed a default to enter). Furthermore, where the insured materially impairs the insurer's ability to investigate a claim, and a determination of liability is entered, the insurer's rights are prejudiced as a matter of law. N.Y. INS. LAW § 3420(c)(2)(B). Similarly, where the insured fails to cooperate and hinders the insurer's ability to investigate and defend the action, the insurer may disclaim coverage. *Matter of State Farm Indem. Co. v. Moore*, 58 A.D.3d 429, 430 (N.Y. App. Div. 2009); *see e.g.*, *Rocco v. Cont'l Ins. Co.,* No. CV990171669SX05, 2003 WL 21235478, *8 (Conn. Super. Ct. May 13, 2003) ("A substantial

---

[4] It is Lakian's and Lamm's understanding from XL's counsel that XL will not oppose Knox/DJW's motion to intervene, but if intervention is granted, will take the position that Knox/DJW are not entitled to any of the Policy proceeds. Although XL may not have a position on the intervention motion, the interpleader does not give XL a "free pass" from its obligations to administer the Policy. While that may not be an issue for present purposes, Lakian and Lamm reserve all rights vis-à-vis XL.

or material breach of a cooperation clause in an insurance policy puts an end to an underwriter's obligation to its insured.") (collecting cases).

The Policy made it Capital L's duty as the insured "to defend any Claim under this Policy." (Complaint Ex. 1 § II.(B)(1).) Capital L was obligated to cooperate with XL. (*Id.* § II(I)(1).) The Policy also prohibited Capital L from admitting any liability without XL's consent. (*Id.* § 11 (B)(2) ("No Insured may incur any Defense Expense or admit any liability for . . . any Claim without the Insurer's consent . . . .").) It further stated that XL had the right "to make investigations and conduct negotiations and, with the consent of the Insured, enter into such settlement of any Claim as the Insurer deems appropriate." (*Id.* § 11.(B)(2).).

Capital L breached all of those obligations. Capital L did not defend itself as required. Instead, it permitted a default to enter and incurred liability in breach of the Policy. As a result, Capital L is not entitled to Policy proceeds. Since Knox/DJW "stand in the shoes" of Capital L, they are also not entitled to Policy proceeds.

### C. Knox/DJW Do Not Have a Direct Right Against XL.

Knox/DJW's intervention is also frivolous and futile because they do not have a direct cause of action against XL. There is no common law direct right of action from a judgment creditor to the insurer. *Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 353 (N.Y. App. Div. 2004). New York Insurance Law section 3420 creates a limited direct right of action in certain circumstances. *Cont'l Ins. Co. v. Atlantic Cas. Ins. Co.*, 603 F.3d 169, 175 (2d Cir. 2010). However, New York law is clear that unless the provisions of section 3420 that create the cause of action apply, there is no direct right of action. Section 3420 is "strictly construed and does not create any rights which are not expressly provided in it." *Commonwealth Land Title Ins. Co. v. Am. Signature Servs., Inc.*, No. 13-cv-3266, 2014 WL 672926, at *6 (E.D.N.Y. Feb. 20, 2014).

#### 1. Section 3420 Does not Apply to the Policy.

Section 3420 applies to policies issued or delivered in New York "insuring against liability for injury to person . . . or against liability for injury to person, or destruction of, property." N.Y. INS. LAW § 3420(a); s*ee also, Commonwealth Land Title Ins. Co.*, 2014 WL 672926, at *6. In addition, section 3420 only applies to policies "issued or delivered" in New York. Thus, it does not apply unless the insurer or its agent issued the policy in New York or the policy was delivered to the insured or its broker in New York. *See Preserver Ins. Co. v. Ryba*, 893 N.E.2d 97 (N.Y. 2008) (Section 3420 does not apply to a policy issued by a New Jersey insurer and delivered in New Jersey to the New Jersey insured). Section 3420(a) also requires all New York insurance contracts insuring against liability for injury to person or destruction of property to contain certain provisions related to judgment creditors. N.Y. INS. LAW § 3420(a)(2); *Cont'l Ins. Co.*, 603 F.3d at 174.

Section 3420 does not apply to the Policy. First, the Policy does not insure against liability for injury to person or destruction of property. Second, the Policy was not issued or delivered in New York. It was issued from XL's executive office in Stamford, Connecticut to Capital L Group, LLC in Charlotte, North Carolina. (Complaint Ex. 1 at 1.) Third, the Policy does not contain any of the provisions required by section 3420.

Since section 3420 does not apply, Knox/DJW have no direct right of action against XL. Even if they were somehow permitted to intervene, they have no cause of action. Without a cause of action, they cannot assert any rights or interests in the Policy. Permitting Knox/DJW to intervene when they have no cause of action would be futile, and this Court should deny Knox/DJW's motion.

### D. Even if Capital L Could Assert an Action and was Entitled to Coverage, Knox/DJW Do Not Trump Lakian's and Lamm's Rights as Insureds with Earlier Claims.

If they were somehow permitted to intervene, Knox/DJW assert that as judgment creditors, they should be able to cut in line in front of other insureds who already made claims under the Policy. That is not the case. In the absence of a policy provision to the contrary, insurance proceeds are distributed on a "first-come, first served basis." *See* 70A N.Y. JUR. INSURANCE § 2216. The insurer may settle claims as they are submitted, even if settling earlier claims exhausts the policy limits. *STV Group v. Am. Cont'l Props.*, 234 A.D.2d 50, 51 (N.Y. App. Div. 1996) ("An insurer may settle with less than all of the claimants under a particular policy even if such settlement exhausts the policy proceeds.") (citations omitted); *In re September 11 Prop. Damage Litig.*, 650 F.3d 145, 153 (2d Cir. 2011) (citing *STV Group*). This is particularly true where "there is a *bona fide* issue as to whether the disfavored claim is covered under the policy." *STV Group*, 234 A.D.2d at 51. Once the insurer "has paid the full monetary limits set forth in the policy, its duties under the contract of insurance cease." *Boris v. Flaherty*, 242 A.D.2d 9, 12, 1998 N.Y. Slip Op. 04161, *14 (N.Y. App. Div. 1998). A judgment creditor does not take precedence over other claimants who were first in time. *STV Group*, 234 A.D.2d at 51. In *STV Group*, the insurer already set aside policy proceeds for an insured who had submitted and pursued a claim. A judgment creditor then attempted to assert its claim, arguing that its rights were superior. The court disagreed, ordering that the judgment creditor to wait for the resolution of a coverage action between the insurer and the insured "to see if any policy proceeds remain to satisfy its claim, in the event it establishes coverage." *Id.*

Lakian and Lamm met all their obligations under the Policy. They submitted claims, cooperated with XL, and defended against the causes of action asserted against them as required under the Policy. XL agreed to advance the Defense Expenses. The Policy is now at or near the

11

point of exhaustion from paying those Defense Expenses. XL had no obligation to reserve or set aside any of the Policy limits for the benefit of Capital L or Knox/DJW prior to this interpleader. Like the judgment creditor in *STV Group*, Knox/DJW have no greater rights than Lakian and Lamm, and at a minimum must wait for resolution of the interpleader action to see if any Policy limits remain to satisfy its judgment, assuming they could even establish an entitlement coverage (which they clearly cannot). Permitting them to intervene, where the Policy limits will be exhausted with current claims, would be wasteful, and this Court should therefore deny Knox/DJW's motion.

## POINT II

### KNOX/DJW ARE NOT ENTITLED TO INTERVENTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 24.

Even if Knox/DJW's intervention were not futile, which it is, they have not met the factors for intervention either as of right under Federal Rule of Civil Procedure 24(a) or permissively under Rule 24(b). First, any interest Knox/DJW may have in the Policy is speculative and contingent. Second, permitting intervention will cause undue delay and prejudice to the existing parties. As set forth above, any interest Knox/DJW has in the Policy is subject to complicated coverage issues. Interjecting those issues into this interpleader will dramatically alter the scope of this proceeding and will cause undue delay.

### A.   Knox/DJW Do Not Meet the Factors for Intervention as of Right Under Federal Rule of Civil Procedure 24(a).

The factors to establish a right to intervene under Rule 24(a)(2) are well settled. The party seeking to intervene must show:

> (1) the application is timely;
> (2) the applicant claims an interest relating to the property or transaction which is the subject matter of the action;
> (3) the protection of the interest may as a practical matter be impaired by the disposition of the action; and

12

(4) the interest is not adequately protected by an existing party.

*Restor–A–Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.,* 725 F.2d 871, 874 (2d Cir. 1984); Fed. R. Civ. P. 24(a).  Intervention will be denied unless all four requirements are met. *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.,* 922 F.2d 92, 96 (2d Cir. 1990).

The proposed intervenor's interest must be "direct, substantial, and legally protectable." *Donaldson v. United States*, 400 U.S. 517, 531 (1971); *Wash. Elec. Co-op*, 922 F.2d at 96. "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Id.* at 97 (citing *Restor-A-Dent Dental Labs, Inc.*, 725 F.2d at 874).  The law is clear that a putative intervenor's alleged interest in insurance policy proceeds to satisfy a possible future judgment against the policyholder is too remote and too speculative to permit intervention.  *In re Platinum & Palladium Commodities, Litig.*, No. 10-CV-3617, 2014 WL 3500655, at *7 (S.D.N.Y. July 15, 2014) (interest is too speculative where it is "contingent on obtaining a judgment" and on proving "the judgment was covered by any of the policies at issue.").

Knox/DJW's interests are similarly too remote and contingent to warrant intervention as a matter of right.  Their claimed interests are that they may be able to look to the policy to satisfy their default judgment and that sometime in the future they may obtain a judgment against Lakian and/or Lamm.  For the reasons set forth above, any interest they may have in the Policy to satisfy their default judgment is contingent on a determination that the default judgment is covered by the Policy as well as their pursuit of a novel and unprecedented right to pursue a direct action against XL.  Knox/DJW's claimed interest in using the Policy to satisfy some potential future judgment against Lakian and/or Lamm is even more remote and contingent.  Any such interest is contingent on an ongoing litigation and future determination of coverage.

13

Without demonstrating a direct and protectable interest, Knox/DJW clearly cannot satisfy the requirements for intervention as of right.

### B. Knox/DJW Do Not Meet the Factors for Permissive Intervention Under Federal Rule of Civil Procedure 24(b).

This Court should also decline to exercise its discretion under Rule 24(b) because permitting intervention would cause undue prejudice and delay. Federal Rule of Civil Procedure Rule 24(b) permits the district court to exercise its discretion in deciding whether to permit intervention. It states in relevant part that "[o]n timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). When deciding whether to exercise its discretion, the most important guide is "'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Pitney Bowes*, 25 F.3d at 73 (quoting Fed. R. Civ. P. 24(b)(2)); *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978).

#### 1. Permitting Intervention Would Cause Prejudice and Delay by Altering the Scope of the Present Action.

Knox/DJW's unsupportable claim to an interest in the Policy brings complicated coverage issues into the litigation that are unique to Knox/DJW. The purpose of intervention is to prevent a multiplicity of suits that share common questions of law or fact. *Wash. Elec. Coop., Inc.*, 922 F.2d at 97. However, it is not intended to allow an intervenor to create entirely new suits, or to interject collateral issues into an existing action. *Id.* (collecting cases). A court may decline to grant a motion for intervention where "intervention [would] radically alter [the] scope" of a suit "to create a much different suit." *Wash. Elec. Coop., Inc.*, 922 F.2d at 97. As set forth above, Knox/DJW's coverage under the Policy has yet to be determined, and XL has a number of coverage defenses at its disposal. In addition, Knox/DJW's ability to even bring a direct action is dubious and questionable at best under New York state law. Permitting

14

Knox/DJW to intervene would create a sideshow in an interpleader action where no other coverage disputes presently exist.

### C. Permitting Intervention Will Prejudice the Existing Parties by Destroying Their Expectations.

The Second Circuit has consistently sustained the denial of permissive intervention where granting the request would destroy or delay implementation of an actual or anticipated settlement.  *In re Holocaust Victim Assets Litig.,* 225 F.3d 191, 197 (2d Cir. 2000);  *Pitney Bowes,* 25 F.3d at 73; *Padro v. Astrue*, 11-CV-1788 CBA, 2013 WL 1192824, *5 (E.D.N.Y. 2013) *report and recommendation adopted*, 11-CV-1788 CBA RLM, 2013 WL 1192819 (E.D.N.Y. 2013) (intervention would prejudice existing parties by derailing ongoing settlement process).  XL, K&K, ELLK, Merrill, Lakian and Lamm have been actively discussing a resolution of this action, which will likely occur should the Court deny Knox/DJW's application.  Permitting Knox/DJW to intervene, on the other hand, would derail that effort.

### CONCLUSION

For the foregoing reasons, Defendants Lakian and Lamm respectfully request that this Court deny Proposed Intervenors Knox/DJW's motion for leave to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) and for leave to permissively intervene under Federal Rule of Civil Procedure 24(b).

Dated: September 22, 2014  
       Newark, New Jersey

Respectfully submitted,  
MCCARTER & ENGLISH LLP

By: /s Brian J. Osias_____  
Brian J. Osias  
4 Gateway Center  
100 Mulberry Street  
Newark, NJ 07102  
Telephone: (973) 622-4444  
Facsimile: (973)624-7070

*Attorneys for Defendants Lakian and Lamm*

15