USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/15/2015_

XL SPECIALTY INSURANCE COMPANY,

Plaintiff,

-against-

JOHN R. LAKIAN, DIANE W. LAMM, &
KOBRE & KIM LLP

Defendants.

14 Civ. 5225 (AT)

**MEMORANDUM
AND ORDER**

ANALISA TORRES, District Judge:

Interpleader Plaintiff, XL Specialty Insurance Company ("XL"), brings this action

seeking to resolve conflicting and competing demands for the remaining $1,372,596.10 of a $3

million insurance policy that it issued to Capital L Group, LLC ("Capital L"). XL has named

John R. Lakian, Diane W. Lamm, and Kobre & Kim LLP ("Kobre & Kim") as interpleader

defendants (collectively, "Interpleader Defendants"). Now before the Court are four Rule 24

motions to intervene submitted by the following parties: (1) Eiseman Levine Lehrhaupt &

Kakoyiannis, P.C. ("Eiseman"); (2) Brief Carmen & Kleiman ("Brief"); (3) Merrill

Communications LLC ("Merrill"); and (4) Knox, LLC d/b/a Knox, LLC of New York and DJW

Advisors, LLC (collectively, "Knox and DJW"). XL's position is that all parties asserting a

claim to the policy proceeds should be permitted to intervene. The motions of Eiseman, Brief,

and Merrill are unopposed. Lakian, Lamm, Kobre & Kim, Eiseman, Brief, and Merrill each

oppose Knox and DJW's motion to intervene.[1]

For the following reasons, the motions of Eiseman, Brief, and Merrill are GRANTED.

Knox and DJW's motion is DENIED with leave to renew.

---

[1] Lakian and Lamm also submit a motion seeking leave to file a sur-reply opposing Knox and DJW's motion to
intervene and attach the proposed sur-reply. ECF Nos. 61, 61-1. Given the absence of bad faith and the Court's
interest in considering all meritorious arguments, the motion to file a sur-reply is GRANTED. *See Newton v. City of
New York*, 738 F. Supp. 2d 397, 417 n.11 (S.D.N.Y. 2010). The Court has reviewed and considered the sur-reply.

This interpleader action arises from an insurance coverage dispute. XL issued a financial services liability insurance policy (the "Policy") to Capital L for the period from November 1, 2011 to November 1, 2012. Compl. ¶ 15, ECF No. 2. The Policy provides coverage to the insured parties—namely Capital L, Lakian, and Lamm—for losses, including damages, judgments, settlements, and defense expenses, arising from claims first asserted during that period for specified wrongful acts. *Id.* ¶¶ 17, 23; *see also* Compl. Ex. A at 35-40 (General Terms & Conditions), ECF No 2-1. The Policy has a $3 million maximum aggregate limit of liability. Compl. ¶ 17. Under the terms of the Policy, the $3 million limit of liability to pay damages or settlements is reduced, and may be exhausted, by defense expenses incurred in defense of a claim. Compl. ¶ 20. Once XL has paid an aggregate $3 million in losses and covered defense expenses, it has no further obligations under the Policy. *Id.* ¶¶ 21-22.

On July 14, 2013, XL filed this interpleader action to resolve competing claims for the proceeds of the Policy and to be discharged from further liability with respect to those proceeds. *Id.* ¶¶ 55-58. Pursuant to Local Civil Rule 67.1 and as required under 28 U.S.C. § 1335, XL has deposited the remaining $1,372,596.10 limit of the $3 million Policy into the Registry of this Court. Docket Entry, dated July 31, 2014, Receipt Number 465401101200; *see also* Order to Deposit Funds into the Registry of the Court, ECF No. 3.

I. Interpleader Defendants

   A. Lakian and Lamm

   The insured parties, Lakian and Lamm, have sought coverage under the Policy for

---

[2] This background section is derived from the complaint and the allegations set forth in the intervention motions now before the Court. In addressing each of the four motions to intervene, the Court accepts as true all non-conclusory and non-frivolous allegations as set forth in the respective party's motion. *See Bay Casino, LLC v. M/V Royal Empress*, 199 F.R.D. 464, 466 (E.D.N.Y. 1999) (citing *Reich v. ABC/York–Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995)).

defense expenses incurred in two actions: (1) *Knox, LLC v. Capital L. Group, LLC*, No. 651880/2012 (N.Y. Sup. Ct., N.Y. Cnty.) (the "Knox Action"); and (2) *Branigan v. Lakian*, No. 651975/2012 (N.Y. Sup. Ct., N.Y. Cnty.) (the "Branigan Action"). *Id.* ¶¶ 26, 37.

The Knox Action involved allegations that Lakian and Lamm fraudulently induced investments in the now defunct Capital L and breached their fiduciary duties by allegedly misusing the plaintiffs' investments. *Id.* ¶ 37. The Knox plaintiffs alleged damages in excess of $2 million. *Id.* By letter dated June 20, 2012, XL acknowledged coverage under the policy for Lakian and Lamm and agreed to advance such expenses incurred in defending the Knox action. *Id.* ¶ 38. Lakian and Lamm initially retained Kobre & Kim to defend them in the Knox action. *Id.* ¶ 39. Kobre & Kim withdrew in late May or early June 2013, and Lakian and Lamm each retained separate counsel. *Id.* ¶ 41. Lamm hired Eiseman, and Lakian hired Brief. Capital L was also named as a defendant in the Knox Action, and, as described in greater detail below, a default judgment was entered against Capital L. *See* Halpern Aff. ¶¶ 4-13, ECF No. 27. XL does not acknowledge coverage for Capital L in connection with the Knox action, XL Mem. 2, 9-10, ECF No. 37, and, when XL contacted Capital L regarding its obligation to defend, XL received no response from Capital L or its agent, Hansen Decl. ¶¶ 4-5, ECF No. 40.

The Branigan Action involved similar allegations that Lakian and Lamm, among others, engaged in fraudulent inducement and fiduciary breaches. Compl. ¶ 26. The Branigan plaintiffs alleged damages in excess of $10 million. *Id.* By letter dated October 16, 2012, XL acknowledged coverage under the policy for Lamm for the Branigan Action and agreed to advance defense expenses. *Id.* ¶ 38. Lamm initially retained Kobre & Kim to represent her. *Id.* ¶ 29. Kobre & Kim withdrew in late May or early June 2013, and Lamm subsequently retained counsel at Eiseman. *Id.* ¶¶ 33-34. XL, however, denied coverage to Lakian in connection with

the Branigan Action. *Id.* ¶ 32. The parties stipulated to resolve the Branigan Action by arbitration. *Id.* ¶ 27.

To date, XL has advanced $1,627,403.90 in defense expenses, including expenses incurred by Lakian and Lamm in the Knox Action and expenses incurred by Lamm in the Branigan Action. *Id.* ¶¶ 35, 42. Both the Knox and Branigan Actions are still at the discovery stage, and Lakian and Lamm continue to incur defense expenses and request that XL cover such expenses. *Id.* ¶¶ 36, 43-44. XL states that, based on invoices received and the current status of these actions, defense expenses and/or settlement amounts will exceed the remaining limit of the Policy. *Id.* ¶ 5.

### B. Kobre & Kim

Kobre & Kim represented Lakian and Lamm in the Knox Action and Lamm in the Branigan Action through late May or early June 2013. *Id.* ¶¶ 33, 41. During the time that Kobre & Kim represented Lamm in connection with the Branigan Action, Kobre & Kim billed Lamm approximately $1,314,780.19 in fees and costs, more than $1 million of which remains outstanding. *Id.* ¶ 45. Lamm disputed the Kobre & Kim invoices and instructed XL not to pay the full amount on the grounds that the invoices did not represent work performed on her behalf and that the amount was unreasonable. *Id.* ¶¶ 46, 47. Kobre & Kim has demanded that XL pay the full outstanding amount of its invoices. *Id.* ¶ 48. Kobre & Kim is not an insured party under the Policy. *Id.*

### II. Proposed Intervenors

### A. Eiseman

In June 2013, Lamm engaged Eiseman to represent her in the Knox Action and the Branigan Action, and the parties executed a retainer agreement. Levine Decl. ¶¶ 4-7, ECF No.

23. Lamm informed Eiseman that she was an insured under the Policy and that XL would pay Eiseman fees and expenses incurred in connection with these actions. *Id.* ¶ 8. Until the filing of this interpleader action, XL paid, on eleven occasions, all of Eiseman's fees and expenses, totaling approximately $758,000. *Id.* ¶ 18. In August 2014, Eiseman learned that McCarter & English, counsel for Lakian and Lamm in this interpleader action, would be substituting for Eiseman in the Knox and Branigan Actions. *Id.* ¶ 27. At the time Eiseman was terminated, Lamm owed $145,260.17 in fees incurred since May 2014. *Id.* ¶ 29. Eiseman filed a motion to intervene on September 8, 2014. ECF No. 21.

B. Brief

In June 2013, following Kobre & Kim's withdrawal from representation, Lakian retained Brief to represent him in the Knox Action, and a formal substitution of counsel was filed by Kobre & Kim on July 31, 2013. Carmen Decl. ¶¶ 13, 14, ECF No. 33. XL acknowledged coverage for Lakian under the Policy in connection with the Knox Action and agreed to advance 75% of the defense expenses incurred by Lakian in that action. *Id.* ¶ 15. From June 2013 through June 2014, XL advanced to Brief $87,059.10 in defense expenses. *Id.* ¶ 16. As of August 31, 2014, the outstanding fees and expenses owed by XL to Brief in connection with the Knox Action were approximately $53,930.06. *Id.* ¶¶ 17-18. Brief filed a motion to intervene on September 8, 2014. ECF No. 30.

C. Merrill

Merrill provides e-discovery services, including the hosting of electronic discovery material, for use in litigation. Cutri Decl. ¶ 2, ECF No. 53. On February 8, 2013, Kobre & Kim entered into a statement of work ("SOW") agreement with Merrill, whereby Merrill agreed to provide e-discovery services to Kobre & Kim in connection with Lamm's representation in the

Knox and Branigan Actions. *Id.* ¶ 3. By e-mails dated February 5 and 8, 2013, XL confirmed that Merrill was to be paid as an approved litigation expense under the Policy. *Id.* ¶ 4. Kobre & Kim informed Merrill that XL was responsible for paying Merrill. *Id.* ¶ 7.

In June 2013, Kobre & Kim advised Merrill that Eiseman was assuming representation of Lamm and that the discovery database was being transferred to Eiseman. *Id.* ¶ 6. XL, through counsel, consented to the substitution by Eiseman. *Id.* In June 2013, Eiseman entered into an SOW agreement with Merrill, whereby Merrill would continue to provide e-discovery services in connection with Lamm's representation in the Knox and Branigan Actions. *Id.* ¶ 7. In January 2014, Eiseman entered into a second SOW agreement with Merrill, which stated that: (1) Merrill would provide user licenses to Brief in connection with Lakian's representation in the Knox and Branigan Actions; and (2) Brief would pay 25% of Merrill's monthly hosting costs. *Id.* ¶ 8. Eiseman was to be billed the remaining 75% of the monthly costs. *Id.* Both SOW agreements between Merrill and Eiseman made reference to February 2013 e-mails from XL confirming that Merrill was to be paid as an approved litigation expense under the Policy. *Id.* ¶¶ 7-8.

XL paid Merrill for e-discovery services provided under Merrill's SOW agreement with Kobre & Kim. *Id.* ¶ 9. XL also paid Merrill for e-discovery services provided under both of Merrill's SOW agreements with Eiseman, but payments ceased in approximately March 2014. *Id.* Merrill now asserts that it is owed approximately $53,936.21 from the Policy proceeds for e-discovery services provided in connection with Lamm's defense. *Id.* ¶ 10. Merrill does not assert a claim to the Policy proceeds for services provided in connection with Lakian's representation. Merrill filed a motion to intervene on October 10, 2014. ECF No. 51.

D.  Knox and DJW

Knox and DJW are plaintiffs in the Knox Action. On October 11, 2012, Knox and DJW

served an amended verified complaint in the Knox Action on Capital L manager Alan Boyer. Halpern Aff. ¶¶ 4-5. The affidavit of service states that Capital L "is now a defunct company per information provided by Alan Boyer." *Id.* Capital L did not answer or appear, *id.* ¶ 5, and on November 26, 2012, Knox and DJW moved for default judgment against Capital L, *id.* ¶ 8. By order dated July 22, 2013, the court in the Knox Action granted a default judgment against Capital L and referred the issue of damages to a Special Referee, who awarded damages (a) in favor of Knox in the amount of $2,000,329.25 plus interest and (b) in favor of DJW in the amount of $50,000 plus interest. *Id.* ¶¶ 9-11. On March 27, 2014, a judgment was filed and docketed in Supreme Court, New York County, (a) in favor of Knox in the amount of $2,573,918.63 and (b) in favor of DJW in the amount of $64,566.10. *Id.* ¶ 12. These judgments were served on Capital L and remain unsatisfied to date. *Id.* ¶ 13. Knox and DJW filed a motion to intervene on September 8, 2014. ECF No. 26.

## DISCUSSION

I.   Standard of Review

Federal Rule of Civil Procedure 24 permits a non-party to intervene in ongoing litigation as of right or by permission of the court. The applicant bears the burden of demonstrating that it meets the requirements for intervention. *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978). Generally, the Court accepts as true the applicant's well-pleaded, non-conclusory allegations and supporting material. *See Bay Casino, LLC v. M/V Royal Empress*, 199 F.R.D. 464, 466 (E.D.N.Y. 1999). This does not permit courts, however, to turn a blind eye where the allegations are contradicted or unsupported by "credible" proof, *see United Parcel Serv. of Am., Inc. v. The Net, Inc.*, 225 F.R.D. 416, 422 (E.D.N.Y. 2005), or are unproven by a "clear showing," *see United States v. Int'l Tel. & Tel. Corp.*, 349 F. Supp. 22, 27 n.4 (D. Conn. 1972).

To obtain intervention as of right under Rule 24(a), an applicant must make a four-part showing: (1) the application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may practically impair the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). "The intervention application will be denied unless all four requirements are met." *Id.* In applying this test, courts must be cognizant that the "various components . . . are not bright lines, but ranges—not all 'interests' are of equal rank, not all impairments are of the same degree, representation by existing parties may be more or less adequate, and there is no litmus paper test for timeliness." *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984). "[A]lthough the Rule does not say so in terms, common sense demands that consideration also be given to matters that shape a particular action or particular type of action." *Id.*

Courts consider "substantially the same factors" under Rule 24(b) permissive intervention as with intervention as of right under Rule 24(a). *See R Best Produce, Inc. v. Shulman–Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006). Rule 24(b) instructs the district court, in exercising its discretion with respect to permissive intervention, to consider "whether the intervention [would] unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

II.   Intervention as of Right

A.  Timeliness

Under both provisions of Rule 24, the threshold inquiry is whether the application for intervention is timely. "Among the factors to be taken into account to determine whether a

motion to intervene is timely are: (a) the length of time the applicant knew or should have known of his interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to applicant if the motion is denied; and (d) presence of unusual circumstances militating for or against a finding of timeliness." *United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987) (citations omitted). The timeliness analysis is not rigidly applied, and the decision is entrusted to the district court's discretion. *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594-95 (2d Cir. 1986).

The Court finds that each of the four motions to intervene satisfies the timeliness requirement. All of the proposed intervenors filed their respective motions within three months of the filing of the complaint. To date, none of the Defendants has answered the complaint, and no discovery has taken place. *Cf. EEOC v. Mavis Disc. Tire*, 12 Civ. 0741, 2013 WL 5434155, at *4 (S.D.N.Y. Sept. 30, 2013) ("The intervention was timely, because when it was filed in April 2012, the action was less than three months old, discovery had not yet begun, and Defendants had only recently filed their answer." (citations omitted)). As no responsive pleadings have been filed, the Court finds that the timing of these motions poses no prejudice to the existing parties. *See EEOC v. Rekrem, Inc.*, 199 F.R.D. 526, 528 (S.D.N.Y. 2001). Indeed, to the extent that each of the proposed intervenors is able to demonstrate a protectable interest in this litigation, it would be prejudicial to deny these parties the opportunity to present their respective claims to the proceeds of the Policy. Finally, there are no unusual circumstances that militate against a finding of timeliness. To the contrary, as this is an interpleader action in which Plaintiff has actively encouraged intervention in order to resolve competing claims to the Policy proceeds, the circumstances weigh, if anything, toward timeliness. Accordingly, the Court finds that each of the proposed intervenors' motions is timely.

B. Significant Protectable Interest

Rule 24(a)(2) provides for intervention as of right where the applicant "claims an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). The burden to demonstrate a right to intervene, including a cognizable interest, is at all times on the applicant. *See In re NASDAQ Market–Makers Antitrust Litig.*, 187 F.R.D. 465, 490 (S.D.N.Y. 1998); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 58 (S.D.N.Y. 1993). Although the applicant "need not have an independent cause of action," *United States v. Palermino*, 238 F.R.D. 118, 121 (D. Conn. 2006), the interest must be "a legal interest as distinguished from interests of a general and indefinite character," *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (internal quotation marks omitted). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (citation and internal quotation marks omitted). Instead, the interest "must be direct, substantial, and legally protectable." *Bridgeport Guardians v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (citation and internal quotation marks omitted).

As indicated above, the motions of Eiseman, Brief, and Merrill are unopposed, whereas Interpleader Defendants and the remaining three proposed intervenors have submitted papers in opposition to Knox and DJW's intervention. The Court addresses the interests of each of the proposed intervenors in turn.

1. Eiseman

Eiseman claims that it is entitled to a portion of the Policy proceeds based on costs and fees incurred representing Lamm in the Knox and Branigan Actions. XL agreed to pay these

expenses from the Policy and, in fact, made eleven payments on Eiseman's invoices between October 2013 and June 2014. Levine Decl. ¶¶ 10-18. Eiseman now claims that $145,260.17 in defense expenses covered under the Policy is outstanding. *Id.* ¶ 29. Eiseman's interest in the proceeds of the Policy is direct and legally cognizable, and it is distinct from that asserted by Lamm, Lakian, Kobre & Kim, and the remaining proposed intervenors. *See N.J. Carpenters Health Fund v. Residential Capital, LLC*, 08 Civ. 5093, 2010 WL 5222127, at *4 (S.D.N.Y. Dec. 22, 2010). Accordingly, Eiseman has asserted a protectable interest in the remaining Policy proceeds, now deposited in the Registry of the Court, which "relat[es] to the property or transaction that is the subject of [this] action." Fed. R. Civ. P. 24(a)(2).

2. Brief

Brief asserts that it is entitled to costs and fees incurred representing Lakian in the Knox Action. According to a declaration submitted by Brief, XL acknowledged that it would provide coverage for Lakian under the Policy in connection with the Knox Action. Carmen Decl. ¶¶ 15-16. XL agreed to advance 75% of the defense expenses incurred by Lakian and advanced $87,059.10 in defense expenses to Brief. *Id.* Brief now claims outstanding legal fees and other expenses in the amount of approximately $53,930.06. *Id.* ¶¶ 17-18. Brief's interest in the proceeds of the Policy is direct and legally cognizable, and its claim is distinct from that asserted by Interpleader Defendants and the other proposed intervenors. *See N.J. Carpenters*, 2010 WL 5222127, at *4. Brief has identified a protectable interest in the remaining Policy proceeds, and this interest "relat[es] to the property or transaction that is the subject of [this] action." Fed. R. Civ. P. 24(a)(2).

3. Merrill

Merrill, an e-discovery provider, was engaged first by Kobre & Kim and subsequently by

Eiseman in connection with their representation of Lamm in the Knox and Branigan Actions. By e-mails dated February 5 and 8, 2013, XL confirmed that Merrill was to be paid as an approved litigation expense under the Policy. XL subsequently made payments to Merrill for services provided to both Kobre & Kim and Eiseman. Merrill claims that it is owed approximately $53,936.21 for covered defense expenses incurred by Lamm and her counsel. Merrill has identified a direct, protectable interest in the Policy proceeds, and this interest "relat[es] to the property or transaction that is the subject of [this] action." Fed. R. Civ. P. 24(a)(2).

4. Knox and DJW

Knox and DJW seek to recover from the proceeds of the Policy. Knox and DJW argue that they have a substantial and protectable interest in the proceeds pursuant to (1) their default judgment against the now defunct Capital L in the Knox Action and (2) XL's recognition of coverage for Lakian and Lamm in the Knox Action. Knox Mem. 8-9, ECF No. 28. Knox and DJW contend that their ability to recover against Capital L, Lakian, and Lamm in the Knox Action will be directly affected by the outcome of this interpleader action. *Id.* at 9.

Lakian and Lamm, joined in their opposition by Merrill, argue that Knox and DJW are not entitled to the Policy proceeds for two reasons: (1) Capital L is not entitled to any proceeds due to its multiple and material breaches of the Policy, and Knox and DJW, judgment creditors attempting to "step into the shoes" of Capital L, also lack any rights under the Policy; and (2) Knox and DJW's alleged interest in the Policy proceeds, to the extent it is based on claims asserted against Lakian and Lamm, is "too contingent and speculative" and would depend on the proposed intervenors someday obtaining a judgment against Lakian and Lamm. Lakian Opp. Mem. 1-2, ECF No. 41; *see also* Merrill Opp. Mem., ECF No. 50. Kobre & Kim, joined in its opposition by Eiseman and Merrill, also contends that Knox and DJW have failed to state a

12

protectable interest in the Policy for essentially the same reasons. Kobre Kim Opp. Mem., ECF No. 36; *see also* Eiseman Opp. Mem., ECF No. 39; Merrill Opp. Mem. In addition, although XL does not oppose Knox and DJW's motion to intervene, XL "does not concede that all proposed intervenors have a valid claim to the proceeds." XL Mem. 2. XL states that Knox and DJW have "no current, valid right to the proceeds as a judgment creditor of Capital L." *Id.* at 9. XL asserts that Knox and DJW, "standing in the shoes of Capital L, should not be permitted to step in front of the parties who complied with the provisions of the policy." *Id.* at 2.

a. Waiver

Knox and DJW argue that, when XL filed this interpleader action and deposited the remaining proceeds with the Court, XL became a "neutral stakeholder" and waived all coverage defenses, including any coverage defenses as to Capital L, Knox, or DJW. Knox Reply 7-9, ECF No. 48. In support of this proposition, Knox and DJW cite a 1994 case in which an Ohio court applying New York law wrote in a footnote, "Great American apparently abandoned all contract defenses and conceded liability for the full limits of its property damage coverage by initiating this interpleader action and depositing its stake with the Court." *Great Am. Ins. Co. v. Spraycraft, Inc.*, 844 F. Supp. 1188, 1193 n.3 (S.D. Ohio 1994). *Great American*, however, did not involve a motion to intervene, and the Court does not read the footnote to stand for the proposition that a tenable coverage defense may not be considered in evaluating a non-party's putative interest in an interpleader action.[3] Additionally, neither XL's complaint nor its motion papers can be read to support the conclusion that XL intended to waive its coverage defenses as to specific claimants: XL has explicitly disclaimed any obligation under the Policy to Lakian in

---

[3] Knox and DJW also cite *Reserve Int'l Liquidity Fund, Ltd. v. Caxton Int'l Ltd.*, 09 Civ. 9021, 2010 WL 1779282, at *8-9 (S.D.N.Y. Apr. 29, 2010) in support of this argument. However, waiver was not at issue in that case, which discusses the purpose of the interpleader statute as a mechanism for resolving disputes where a stakeholder faces competing claims based on mutually exclusive theories. *See id.*

connection with the Branigan Action, Compl. ¶ 32, and to Capital L, Knox, and DJW in connection with the Knox Action, XL Mem. 2, 9-10, and XL alleges that Kobre & Kim has no rights under the Policy, *id.* ¶ 25. Knox and DJW have failed to show that XL abandoned its coverage defenses, and, in particular, the Court is unwilling to find that XL's commencement of this action waived all coverage defenses against anyone who might later move to intervene. *See Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 6 F. Supp. 3d 380, 397 (S.D.N.Y. 2014) ("Waiver requires evidence of a clear manifestation of intent, and cannot be 'lightly inferred.'" (citation omitted)); *cf. Charter Oak Ins. Co. v. Maglio Fresh Food*, 979 F. Supp. 2d 581, 597 (E.D. Pa. 2013) (holding under Pennsylvania law that "the payment of the policy limit via the equitable interpleader action cannot be deemed an intentional waiver of [the interpleader plaintiff's] defenses to coverage").

Moreover, even if the Court were to conclude that XL waived its coverage defenses, Knox and DJW have identified no basis in law for holding that an insurer, simply by initiating an interpleader action, affords to all putative intervenors an incontrovertible interest in the proceeds irrespective of the terms of the policy at issue. Indeed, this proposition would produce an absurd result. It would contradict the purpose of the both the interpleader device and the intervention interest requirement if the mere filing of an interpleader action prevented the Court from evaluating whether certain claims to fund proceeds are contractually barred or otherwise not cognizable as a matter of law.

b. Knox and DJW's Putative Interest as Judgment Creditors against Capital L

The Court finds that Knox and DJW have failed to meet their burden of demonstrating a significant protectable interest relating to the Policy proceeds based on their status as judgment creditors of Capital L. As a general matter, a proposed intervenor with a judgment against an

insured party has a legally cognizable interest in the proceeds of the insured party's liability policy. *See, e.g.*, *Gale v. Stallone*, 91 Civ. 3467, 1993 WL 410162, at *1 (S.D.N.Y. Oct. 14, 1993); *Holborn Oil Trading Ltd. v. Interpetrol Bermuda Ltd.*, 658 F. Supp. 1205, 1208 (S.D.N.Y. 1987) (collecting cases). However, that is not the situation before the Court. Knox and DJW are judgment creditors of Capital L, and they now seek to recover on the Policy by "standing in the shoes" of Capital L. Knox and DJW, however, have failed to show that Capital L is entitled to coverage under the Policy. Capital L was initially covered under the Policy and was obligated under its terms to defend itself in litigation, to obtain the consent of XL before conceding liability, and to avoid doing anything that would increase XL's liability. *See* Compl. Ex. A at 37-40 (General Terms & Conditions), §§ II(B)(1)-(2), II(I)(1). However, it is also undisputed that Capital L defaulted in the Knox Action, failed to obtain XL's consent before doing so, and increased XL's exposure to liability. *See* Halpern Aff. ¶¶ 8-13.

Nothing in Knox and DJW's submissions forestalls the conclusion that Capital L failed to comply with the terms of the Policy and, by doing so, vitiated any coverage it was entitled to under the Policy. Thus, because Capital L has no claim to the proceeds, Knox and DJW, as putative subrogees of Capital L, likewise have no right to recover under the Policy. As explained above, Capital L's multiple and material breaches may be properly asserted against Knox and DJW, *cf. Van Gordon v. Otsego Mut. Fire Ins. Co.*, 232 A.D.2d 405, 406 (2d Dep't 1996) ("The noncooperation of an insured party in the defense of an action is a ground upon which an insurer may deny coverage and may be asserted by the insurer as a defense in an action on a judgment by an injured party." (citations omitted)), and, in any case, preclude a finding that Knox and DJW have any rights under the Policy. Although XL does not oppose Knox and DJW's intervention, XL has disclaimed Capital L's coverage and disclaims that Knox and DJW have at

present any rights to the Policy proceeds. *See* XL Mem. 9-10; *see also State Farm Indem. Co. v. Moore*, 58 A.D.3d 429, 430 (2d Dep't 2009) ("When an insured deliberately fails to cooperate with its insurer in the investigation of a covered incident as required by the policy, the insurer may disclaim coverage.").[4]

Knox and DJW also contend that they meet the requirements to bring a direct action against XL under N.Y. Ins. Law § 3420 and, accordingly, that XL may be held liable for the judgment against Capital L, because XL had knowledge of the Knox Action before default was entered. Knox Reply 13-14. The Court does not agree that Section 3420 applies to the Policy, as the plain language of the statute makes clear that it applies only to policies "insuring against liability for injury to person . . . or against liability for injury to, or destruction of, property." N.Y. Ins. Law § 3420(a). *See also Vargas v. Boston Chicken, Inc.*, 269 F. Supp. 2d 92, 95, 97 (E.D.N.Y. 2003) ("[Section 3420] is strictly construed and does not create any rights which are not expressly provided in it." (citation omitted)). Significantly, each of the cases relied on by Knox and DJW in which an insurer was forced to indemnify a default judgment creditor where it could have prevented the default involved injuries to persons or property. *See Am. Transit Ins. Co. v. Hashim*, 68 A.D.3d 618 (1st Dep't 2009) (automobile collision resulting in personal injury); *Am. Transit Ins. Co. v. B.O. Astra Mgmt. Corp.*, 12 Misc. 3d 740 (Sup. Ct. N.Y. Cnty.

---

[4] Knox and DJW contend that XL cannot disclaim coverage for Capital L based on Capital L's failure to notify XL of the Knox Action as required in its defense as required under the Policy, because XL had notice of the allegations against Capital L. This argument does not support Knox and DJW's claimed interest. *See generally Travelers Indem. Co. v. Northrop Grumman Corp.*, 3 F. Supp. 3d 79, 105 (S.D.N.Y. 2014) ("The fact that an insurer may have actual notice from another source does not relieve the insured of its separate contractual obligation to provide notice." (citations omitted)). New York courts have recognized that where insured parties are not adverse, notice from one of the insured parties will constitute notice as to the others. *See, e.g., Am. Home Assur. Co. v. BFC Constr. Corp.*, 81 A.D.3d 545, 546 (1st Dep't 2011). However, Knox and DJW's submissions, *see* Halpern Aff. ¶¶ 7, 14-17, do not support the conclusion that Lakian and Lamm were "united in interest" with Capital L such that the notice Lakian and Lamm provided to XL can be imputed to Capital L, *23-08-18 Jackson Realty Assocs. v. Nationwide Mut. Ins. Co.*, 53 A.D.3d 541, 543 (2d Dep't 2008) (citations omitted). *See also Travelers Ins. Co. v. Volmar Constr. Co.*, 300 A.D.2d 40, 44 (1st Dep't 2002) ("[N]otice provided by one insured in accordance with the policy terms will not be imputed to another insured . . . in circumstances such as here, where the insured that has provided notice has taken a position adverse to its co-insured in the underlying litigation."). Moreover, the notice requirement is only one of several grounds upon which XL has denied coverage to Capital L.

2006) (automobile accident resulting in personal injury), *aff'd as modified*, 39 A.D.3d 432 (1st

Dep't 2007); *City of New York v. Cont'l Cas. Co.*, 27 A.D.3d 28 (App. Div. 2005) (electrocution

resulting in personal injury). In support of their proposed direct action claim, Knox and DJW

also rely on a footnote in *Commonwealth Land Title Insurance Co. v. American Signature

Services, Inc.*, 13 Civ. 3266, 2014 WL 672926, at *7 n.6 (E.D.N.Y. Feb. 20, 2014), in which the

court explained that it declined to reach whether N.Y. Ins. Law § 3420 applied to the

professional liability insurance contract at issue in that case. That footnote relied on language in

*Lang v. Hanover Insurance Co.*, 3 N.Y.3d 350, 354 (2004) ("[Section] 3420, requires that every

insurance policy issued in New York contain a provision . . .") and *Continental Insurance Co. v.

Atlantic Casualty Insurance Co.*, 603 F.3d 169, 177 (2d Cir. 2010) ("Section 3420(a) requires all

New York insurance contracts . . ."), which, on first glance, would suggest that Section 3420

applies to all New York insurance contracts. *Lang*, however, involved a personal injury claim

arising from a paintball incident, 3 N.Y.3d at 352, and *Continental* involved damage to property,

603 F.3d at 177-78. In other words, both of these cases fall within the plain language of Section

3420(a) and do not support the expansive reading Knox and DJW propose. Knox and DJW have

failed to cite any cases, and this Court is aware of none, where a court recognized a direct action

under Section 3420 in connection with the type of economic injury and financial services

insurance policy at issue here. Accordingly, Knox and DJW have failed to meet their burden of

identifying a protectable interest based on their status as judgment creditors of Capital L.

    c.  Knox and DJW's Putative Interest Based on Claims against Lakian and Lamm

    To the extent that Knox and DJW assert an interest based on their claims against Lakian

and Lamm, that interest is too remote and speculative to warrant intervention at this time, and

any such interest is contingent on the outcome of the Knox Action. *See Brennan*, 260 F.3d at

129. Knox and DJW have not obtained a judgment against Lakian or Lamm and thus have no protectable interest against the proceeds of their insurance policy. *See Nat'l Fire Ins. Co. of Hartford v. Starbro Constr. Corp.*, 08 Civ. 3200, 2009 WL 2602281, at *5 (E.D.N.Y. 2009) ("Without an unsatisfied judgment against [d]efendants, [p]laintiff has no legally protectable interest in litigating the terms of the [defendants' agreements with their insurance carrier]."); *see also B & A Demolition & Removal, Inc. v. Markel Ins. Co.*, 818 F. Supp. 2d 592, 596 (E.D.N.Y. 2011) ("[Proposed intervenor's] interest in this litigation therefore remains inchoate, and contingent upon the outcome of [a related state action]."). Any such interest is premature.

In sum, Knox and DJW have failed to meet their burden of identifying a protectable and legally cognizable interest that would warrant intervention in this interpleader action. Having determined that Knox and DJW have failed to establish the requisite interest in this litigation, the Court need not address the balance of the Rule 24(a) analysis (*i.e.*, whether their putative interest would be impaired or inadequately protected in their absence). *See Pitney Bowes*, 25 F.3d at 70. Knox and DJW are not entitled to intervention as of right. However, they may renew their application at a later date should they obtain a judgment that would give rise to a legally cognizable interest in the Policy proceeds.

C. Impairment of Proposed Intervenors' Interests

The impairment of interest analysis looks to "the practical disadvantage suffered, and does not require the would-be intervenor to go so far as to show that *res judicata* principles would affect any later suit they might bring." *Maryland Cas. Co. v. W.R. Grace & Co.*, 88 Civ. 4337, 1996 WL 34154, at *2 (S.D.N.Y. Jan. 30, 1996). To show that its interest is impaired, the proposed intervenor "must establish not only that it has an interest relating to the subject of the action but also that it 'is so situated that without intervention the disposition of the action may, as

a practical matter, impair or impede [its] ability to protect its interest.'" *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 390 (2d Cir. 2006) (quoting *Pitney Bowes*, 25 F.3d at 70).

With respect to the interests identified by Eiseman, Brief, and Merrill, each has asserted a claim against XL for defense expenses covered under the Policy. As a practical matter, it is possible that, at the conclusion of this interpleader action, the remaining limit of the Policy could be exhausted, and any interested parties with valid claims to those proceeds may lose their only opportunity to recover if they are not able to participate in this action. Indeed, the existing claims before the Court exceed the remaining Policy proceeds. In addition, Eiseman, Brief, and Merrill each claim entitlement to defense expenses covered under the Policy and authorized by XL, and similar legal and factual questions—common not only among Eiseman, Brief, and Merrill but also among Kobre & Kim, Lakian, and Lamm—are likely to affect each of their interests. *N.J. Carpenters*, 2010 WL 5222127, at *4 ("Any disposition on the merits would inevitably affect their claims since they arise from the same course of conduct and assert the same legal theories."). In sum, Eiseman, Brief, and Merrill have sufficiently demonstrated that their interests would be impaired if they are not able to participate in this action.

D. Adequate Protection of Proposed Intervenors' Interests

"In order to prevail [on a motion to intervene as of right], the Proposed Intervenors must . . . show that their interests are not adequately protected by an existing party. . . . Evidence of inadequate representation includes such factors as (1) collusion; (2) adversity of interest; (3) possible nonfeasance; or (4) incompetence." *Miller v. Silbermann,* 832 F. Supp. 663, 672 (S.D.N.Y. 1993) (citations omitted). "While the burden of demonstrating the inadequacy of representation is usually minimal, that burden may become 'more rigorous' if the proposed intervenor and an existing party share 'the same ultimate objective.'" *Drum Major Music Entm't*

*Inc. v. Young Money Entm't LLC*, 11 Civ. 1980, 2012 WL 208107, at *1 (S.D.N.Y. Jan. 18, 2012) (citations omitted).

Proposed intervenors Eiseman, Brief, and Merrill each assert competing claims to the Policy proceeds. Each of these claims arises from defense expenses incurred in connection with the representation provided to Lakian and Lamm. These claims are distinct and adverse from one another and from the claims asserted by Interpleader Defendants. The Court finds that the interests of Eiseman, Brief, and Merrill are not adequately represented by either Kobre & Kim, which has its own distinct claim to defense expenses under the Policy, or by Lakian and Lamm, who continue to incur litigation expenses and whose interests are not perfectly aligned with those of their respective counsel. Each of the claims has the potential to diminish the recovery available to the other prospective claimants. In light of the possibility that the Policy proceeds will be exhausted, each of these claims has the potential to diminish the amounts recoverable by Interpleader Defendants or the other proposed intervenors. Neither Eiseman, Brief, nor Merrill is adequately represented by the existing parties to the suit. Accordingly, the motions of Eiseman, Brief, and Merrill are GRANTED.

III.   Permissive Intervention

For the same reasons that make intervention as of right unwarranted, the Court denies Knox and DJW's request for permissive intervention. *See R Best Produce*, 467 F.3d at 240. The Court also finds that allowing Knox and DJW to intervene at this stage has the potential to cause undue delay, as Knox and DJW may have some incentive to prolong this litigation or stymie anticipated settlement. *See Pitney Bowes*, 25 F.3d at 72. Moreover, intervention by Knox and DJW would be prejudicial to Interpleader Defendants and those proposed intervenors with mature, legally cognizable claims against the proceeds of the Policy. *See N.Y. News, Inc. v.*

*Kheel*, 972 F.2d 482, 487 (2d Cir. 1992).

Accordingly, Knox and DJW's motion to intervene is DENIED. As noted above, Knox and DJW may renew their application for intervention at a later date should they obtain a judgment that would give rise to a legally cognizable interest in the Policy proceeds.

## CONCLUSION

For the reasons stated above, the intervention motions of Eiseman, Brief Carmen, and Merrill are GRANTED. Knox and DJW's motion is DENIED with leave to renew in accordance with this order.

The Clerk of Court is directed to terminate the motions at ECF Nos. 21, 26, 30, 51, and 58.

SO ORDERED.

Dated: January 15, 2015
New York, New York

_____
ANALISA TORRES
United States District Judge